# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

COULTER LOEB,                              )
                                           )
    *Plaintiff,*                        )
                                           )          Civil Action No._____
    v.                                     )
                                           )
CITY OF PHILADELPHIA;                      )
POLICE OFFICER GEORGE J. GASPAR JR.  )
                                           )
                                           )
    *Defendants.*                       )
                                           )

## COMPLAINT

### INTRODUCTION

Observing and documenting police officers' behavior in public by way of audio and video recording is expressive activity protected by the First Amendment to the U.S. Constitution. It is not a crime. Nevertheless, law enforcement officers in the Commonwealth, and the City of Philadelphia in particular, have routinely punished civilians who observe and photograph or otherwise record police activity by filing false criminal charges against them. This case is brought by a man who was arrested, handcuffed, and falsely charged with a crime simply for observing and photographing a police officer at work. This civil rights action seeks declaratory relief and damages.

## JURISDICTION AND VENUE

1.  This action to vindicate plaintiff's rights protected by the First, Fourth, and Fourteenth Amendments to the U.S. Constitution is brought under 42 U.S.C. § 1983. This Court has jurisdiction over this civil rights action under 28 U.S.C. §§ 1331 and 1343. This Court also has jurisdiction under 28 U.S.C. §§ 2201 and 2202 to declare the rights of the parties and to grant all further relief found necessary and proper.

2.  Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(a) in that the defendants are subject to personal jurisdiction within the Eastern District of Pennsylvania and the events that give rise to this action occurred within the Eastern District of Pennsylvania.

## PARTIES

3.  Plaintiff Coulter Loeb is a resident of Cincinnati, Ohio who was visiting and present in Philadelphia, Pennsylvania at all times relevant to this matter.

4.  Defendant City of Philadelphia is a political subdivision of the Commonwealth of Pennsylvania and manages, directs, and controls the Philadelphia Police Department ("PPD"), which employs Defendant Gaspar.

5.  Defendant Gaspar is, and at all relevant times here mentioned was, an officer with the Philadelphia Police Department and was acting under color of state law. Defendant Gaspar is sued in his individual capacity.

## FACTUAL ALLEGATIONS

6.  On July 14, 2011, Mr. Loeb, who had been visiting a friend in Philadelphia, was walking through Rittenhouse Square taking photographs when he observed Defendant Gaspar speaking to two individuals, a man and a woman, both of whom appeared to be homeless.

7.  At the time, Mr. Loeb was a photojournalism student at the University of Cincinnati and a credentialed news reporter.  Additionally, his mother had worked as an advocate for the homeless.  Concerned by the nature of the interaction and the manner in which Defendant Gaspar was speaking to the two homeless individuals, Mr. Loeb stopped walking and began to observe and photograph the encounter.

8.  According to metadata recorded on Mr. Loeb's camera, Mr. Loeb was standing sixteen and a half feet away from Defendant Gaspar and the homeless individuals.

9.  At some point, the homeless man walked away.  Subsequently, the homeless woman began to gather her belongings and stood up as Defendant Gaspar attempted to remove her from Rittenhouse Square.

10. As Defendant Gaspar began to escort the woman from the park, Mr. Loeb approached them and asked if he could take the woman's portrait.  Defendant Gaspar responded with words to the effect of, "No, you'll have to wait until I'm done."

11. Mr. Loeb ceased taking photographs, but continued to observe Defendant Gaspar as he escorted the woman out of the park, following them at a distance.

12. Defendant Gaspar turned and noticed Mr. Loeb following and observing them. Defendant Gaspar then approached Mr. Loeb, towering over Mr. Loeb in an intimidating manner.

13. Defendant Gaspar is much larger than Mr. Loeb.

14. Defendant Gaspar ordered Mr. Loeb to walk in the other direction.

15. Mr. Loeb refused, saying words to the effect of, "No, I know my rights."

16. When Mr. Loeb refused, Defendant Gaspar accused him of interfering with police business, then handcuffed and arrested him.

17. Mr. Loeb was transported to the local police precinct and his belongings, including his camera, were taken from him.

18. Mr. Loeb was placed in a holding cell for approximately one hour.

19. Mr. Loeb was then released from custody and his belongings were returned.

20. Upon his release, Mr. Loeb was issued a citation for disorderly conduct in violation of 18 Pa. Cons. Stat. § 5503(a)(4).

21. Because Mr. Loeb received a subpoena to attend court in relation to the citation, and would have been subject to arrest and prosecution had he failed to comply with that subpoena, he remained seized throughout the pendency of the prosecution.

22. At no time did Mr. Loeb act in a fashion that provided probable cause to arrest him for disorderly conduct under § 5503 or for any other criminal violation.

23. At no time did Mr. Loeb create a hazardous or physically offensive condition.

24. At no time did Mr. Loeb recklessly create a risk of public inconvenience, annoyance, or alarm.

25. On August 22, 2011, Mr. Loeb attended a hearing on his citation in Philadelphia's Community Court, where the charges were dismissed.

26. Mr. Loeb's observation and recording of the police undertaking their official duties is protected by the First Amendment to the United States Constitution, and therefore cannot be said to serve "no legitimate purpose."

4

27. Defendant Gaspar arrested Mr. Loeb and initiated criminal charges against Mr. Loeb without probable cause and in retaliation for observing and recording Defendant Gaspar.

28. Mr. Loeb's experience, as set forth in this Complaint, was a direct result of the customs, policies, and practices of defendant City of Philadelphia ("City").

29. Prior to September 2011, PPD officers routinely instituted criminal proceedings against civilians who observed or recorded police activities.

30. Officers instituted these proceedings in order to intimidate civilians so that they would not continue to monitor and record police behavior, and in retaliation for civilians' constitutionally protected activity.

31. Supervisory police officials, up to and including Police Commissioner Charles H. Ramsey, knew that PPD officers routinely retaliated against civilians for observing and/or recording them. Those officials did nothing to halt these practices but instead, encouraged and directed such practices for years.

32. In March 2011, Commissioner Ramsey personally directed PPD detectives to "re-investigate" a February 13, 2011 incident involving Mark Fiorino, who was stopped and threatened – *but not charged* – by a Philadelphia police officer for openly carrying his licensed firearm. According to a PPD spokesperson, the Commissioner gave this order after learning that Mr. Fiorino had posted an audio recording of the February 13 incident on YouTube and the PPD had been alerted to the recording by a caller. As a result of this "re-investigation," on April 15, 2011 – two months after the incident – a PPD detective initiated charges against Mr. Fiorino, alleging that his simultaneous possession of a licensed firearm *and an audio recorder* meant that Mr. Fiorino was trying to spark a violent police reaction. Mr. Fiorino was ultimately found not guilty of all charges.

33. There have been numerous other incidents of PPD officers threatening to or actually arresting Philadelphians who watch or record the actions of on-duty police officers. Indeed, dozens of such incidents have been reported to the media and to Philadelphia civil rights groups.

34. For instance, on July 23, 2010, Melissa Hurling and Shakir Riley were assaulted by PPD officers when they attempted to use their cellphones to record what they considered to be a violent arrest. *See* Jan Ransom, *Even a Top Cop Concedes a Right to Record Video Arrests – but the Street Tells a Different Story*, Philly.com, Sep. 3, 2011 (attached as Exhibit B; hereinafter *"Even a Top Cop Concedes Right to Record"*). According to reports, officers confronted Riley and destroyed his cellphone, along with the footage he had just recorded, while two other officers approached Hurling and, after exchanging a few words, arrested her. Riley and Hurling were charged with disorderly conduct, but the charges were later dismissed against both of them following a summary trial in March 2011. *See Commonwealth of Pennsylvania v. Hurling*, Docket No. MC-51-SU-0010415-2010, Mar. 10, 2011 (attached as Exhibit C); *Commonwealth of Pennsylvania v. Riley*, Docket No. MC-51-SU-0010571-2010, Mar. 10, 2011 (attached as Exhibit D).

35. On July 2, 2011, Philadelphia resident Zanberle Sheppard was told by neighbors that PPD officers were beating her handcuffed boyfriend in an alley outside their home. *See Even a Top Cop Concedes a Right to Record.* Using her cellphone, she peered out a window of her home and recorded the arrest. Sheppard then ran outside into the alley where, following an altercation, the officers seized her phone. When Sheppard later received her phone back from the PPD, the battery was missing and the video was gone. Sheppard, who had no prior criminal record, was charged with disorderly conduct. *Id.* She was found guilty on August 22, 2011

following a summary trial and was fined. *Commonwealth v. Sheppard*, Docket No. MC-51-SU-0008673-2011, Aug. 22, 2011 (attached as Exhibit E).

36. In September 2011, Commissioner Ramsey issued a memorandum to "remove any confusion as to duties and responsibilities of sworn personnel when being photographed, videotaped or audibly recorded while conducting official business or while acting in an official capacity in any public place" and instructed PPD officers to allow themselves to be recorded. *See* Memorandum from Charles H. Ramsey, Commissioner, Phila. Police Dep't, to Phila. Police Dep't personnel (Sep. 23, 2011) (attached as Exhibit A) (hereinafter "September 2011 Memorandum").

37. Since Commissioner Ramsey's September 2011 Memorandum, however, PPD officers have continued to arrest citizens for observing or recording the police.  For example, a photojournalism student at Temple University was arrested on March 14, 2012.  *See* Angelo Fichera, *After Arrest, Press Network Pushes for Dismissal of Charges*, The Temple News, Mar. 26, 2012 (attached as Exhibit F); Kathy Matheson, *Ian Van Kuyk, Temple Univ. Student Charged After Taking Traffic Stop Pics*, The Huffington Post, Mar. 26, 2012 (attached as Exhibit G). According to reports, the student, Ian Van Kuyk, was photographing a traffic stop as part of a course assignment for night photography.  When Van Kuyk refused to stop photographing, PPD officers arrested him and his girlfriend, who attempted to rescue Van Kuyk's camera.  Van Kuyk was charged with disorderly conduct, obstruction of justice, resisting arrest, and hindering apprehension; his girlfriend was charged with obstruction of justice and disorderly conduct.  Six days after the incident, Van Kuyk's girlfriend entered an Accelerated Misdemeanor Program and agreed to 12 hours of community service and to pay a $200 fine for her charges.  *Id.*  On November 27, 2012, Van Kuyk was found not guilty on all charges following a trial.

*Commonwealth of Pennsylvania v. Van Kuyk*, Docket No. MC-51-CR-0010679-2012, Nov. 27, 2012 (attached as Exhibit H).

38. Further, as is detailed in separate complaints filed by the undersigned counsel, additional incidents have occurred where PPD officers retaliated against civilians attempting to record them in the performance of their official duties.  Specifically:

    a.    Alexine Fleck was arrested on the same block as her home for observing a police officer in his interactions with an apparently incapacitated man sitting on a stoop. Although she stepped back when the officer instructed her to, she would not leave the scene altogether and was arrested and charged with "failure to disperse," which charges were later dismissed.

    b.    Christopher Montgomery, a journalism student at Temple University, was arrested for using his cellphone to record PPD officers making arrests on the corner of 15th and Chestnut Streets.  Mr. Montgomery, along with the rest of the crowd that was observing the arrests, complied with the police officers' requests to step back.  Mr. Montgomery remained approximately fifteen feet from the arresting officers and did not attempt to interfere with the investigation in any way.  Nevertheless, he was arrested and charged with disorderly conduct; he was later found not guilty of those charges.

39. As the September 2011 Memorandum from Commissioner Ramsey indicates, PPD officers should expect to be observed, photographed, videotaped, or recorded while performing their official duties in public.  Further, the Memorandum specifically orders that PPD officers "shall not interfere with any member of the general public or individuals temporarily detained"

8

who seek to photograph, videotape, or record police personnel while they are acting in their official capacities.

40. Based on the numerous incidents identified above and the acknowledgment by the Police Commissioner of "confusion" concerning police responsibilities on these issues, at the time of Mr. Loeb's arrest, the custom of the officers of the Philadelphia Police Department was to regularly arrest persons who observed and documented the behavior of PPD officers.

41. The policymaking officials of the Police Department and the City of Philadelphia knew of this custom.  At the time of Mr. Loeb's arrest, the policymaking officials of the Police Department and the City of Philadelphia acted with deliberate indifference to the constitutional rights of the persons who observe or record police behavior in this City by: (a) failing to properly train, supervise, and discipline PPD officers who retaliate against people who observe or record them; (b) inadequately monitoring PPD officers and their practices related to people who observe or record their activities; (c) failing to properly discipline PPD officers who initiate criminal proceedings against people who observe or record their activities; and (d) failing to rectify the PPD's unconstitutional practice of instituting criminal proceedings against people who observe or record their actions.

42. As a direct and proximate result of Defendants' actions, Mr. Loeb suffered the following injuries and damages:

> a. Violation of his rights under the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, to be free from criminal prosecution or retaliation for engaging in constitutionally protected expressive activity;

    b.  Violation of his rights under the Fourth Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, to be free from malicious prosecution, false arrest, and false imprisonment;

    c.  Loss of his physical liberty;

    d.  Emotional trauma, humiliation, and distress.

## CAUSES OF ACTION

### Count I – First Amendment Retaliation (Against All Defendants)

43. Plaintiff incorporates by reference the allegations of the preceding paragraphs as though set forth at length herein.

44. Observing and recording public police activities, without interfering with those duties, is a legitimate means of gathering information for public dissemination and is therefore expressive conduct protected by the First Amendment to the United States Constitution.

45. Defendant Gaspar's arrest and prosecution of Plaintiff constituted unlawful retaliation by public officials for engaging in activity protected by the First Amendment to the U.S. Constitution.

46. Defendant City of Philadelphia is responsible for the violation of Plaintiff's constitutional rights because Defendant Gaspar's actions resulted from the City's custom, pattern, practice, or policy of allowing officers to arrest individuals for their expressive conduct in monitoring police undertaking their official duties.

### Count II – Malicious Prosecution (Against All Defendants)

47. Plaintiff incorporates by reference the allegations of the preceding paragraphs as though set forth at length herein.

48. Plaintiff has a clearly established right under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from unreasonable seizure of his person. Defendant Gaspar violated this right when he initiated the criminal proceeding against Plaintiff in retaliation for Plaintiff's constitutionally protected observation and recording of Defendant Gaspar's public activities as a law enforcement officer with the PPD and in absence of any probable cause to believe that Plaintiff had committed a crime.

49. The charges against Plaintiff were later terminated in his favor.

50. Defendant Gaspar pursued this prosecution of the Plaintiff with malice in retaliation for Plaintiff engaging in constitutionally protected activity, and without any probable cause or reasonable basis for believing that Plaintiff violated Pennsylvania's disorderly conduct statute or committed any other crime.

51. Defendant City of Philadelphia is responsible for the violation of Plaintiff's constitutional rights because Defendant Gaspar's actions resulted from the City's custom, pattern, practice, or policy of allowing officers to arrest and charge individuals in retaliation for their expressive conduct in monitoring police undertaking their official duties.

**Count III – False Arrest and False Imprisonment (Against All Defendants)**

52. Plaintiff incorporates by reference the allegations of the preceding paragraphs as though set forth at length herein.

53. Plaintiff has a clearly established right under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from unreasonable seizure of his person, a right Defendant Gaspar violated when, claiming to act under proper legal authority, he unlawfully detained and then arrested Plaintiff without any probable cause or reasonable basis for believing that that

Plaintiff violated Pennsylvania's disorderly conduct statute or committed any other crime in the Commonwealth of Pennsylvania.

54. Defendant City of Philadelphia is responsible for the violation of Plaintiff's constitutional rights because Defendant Gaspar's actions resulted from the City's custom, pattern, practice, or policy of allowing officers to retaliation against individuals for their expressive conduct in monitoring police undertaking their official duties.

**PRAYER FOR RELIEF**

Wherefore, in light of the foregoing, Plaintiff respectfully requests the following:

a. Enter a declaratory judgment that the Defendants violated Plaintiff's First Amendment right to observe police activity;

b. Enter a declaratory judgment that the Defendants violated Plaintiff's Fourth Amendment right to be free from unreasonable seizure and malicious prosecution;

c. Award compensatory damages against all Defendants, joint and severally, in an amount to be determined at trial;

d. Award punitive damages against Defendant Gaspar;

e. Enter an award for costs, expenses, and counsel fees pursuant to 42 U.S.C. § 1988; and

f. Enter such other relief as this honorable Court may deem just and deserving.

June 5, 2013                                    Respectfully submitted,

MOLLY TACK-HOOPER
PA ID No.: 307828
MARY CATHERINE ROPER
PA ID No.: 71107

12

American Civil Liberties Foundation
of Pennsylvania
P.O. Box 40008
Philadelphia, PA 19106
Tel: (215) 592-1513 ext. 113
Fax: (215) 592-1343
mtack-hooper@aclupa.org
mroper@aclupa.org

JOHN J. GROGAN
PA ID No. 72443
PETER LECKMAN
PA ID No. 312076
Langer & Grogan, P.C.
The Bell Atlantic Tower
1717 Arch Street, Suite 4130
Philadelphia, Pa. 19103
215.320.5662  Tel.
215.320.5703  Fax.
jgrogan@langergrogan.com
pleckman@langergrogan.com

JONATHAN FEINBERG
PA ID No. 88227
Kairys, Rudovsky, Messing, & Feinberg
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
Tel: (215) 925-4400
Fax: (215) 925-5365
jfeinberg@krlawphila.com

SETH KREIMER
PA ID No. 26102
3400 Chestnut Street
Philadelphia, PA 19104
Tel: (215) 898-7447
skreimer@law.upenn.edu

*Counsel for Plaintiff*